**HOFFMAN LEGAL, LLC**
Amy Wilkins Hoffman (AZ Bar No. 022762)
99 E. Virginia Ave., Ste 220
Phoenix, AZ 85004
E-Mail: ahoffman@hoffmanlegalaz.com
Phone: 480-466-7005

**SMITH KRIVOSHEY, PC**
Joel D. Smith (*pro hac vice* to be filed)
Aleksandr "Sasha" Litvinov (*pro hac vice* to be filed)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
E-Mail: joel@skclassactions.com
E-Mail: sasha@skclassactions.com
Phone: 617-377-7404

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (*pro hac vice* to be filed)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
E-Mail: yeremey@skclassactions.com
Phone: 415-839-7000

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Franca Armstrong and Mandy Islam, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Bestway (USA) Inc., an Arizona corporation, <br><br> Defendant. | Case No. CV-24- <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

## **NATURE OF THE ACTION**

1. This case concerns a life-threatening product and its manufacturer's inadequate recall efforts.

2. On September 12, 2024, Defendant, Bestway (USA) Inc. ("Bestway" or "Defendant"), and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of over 860,000 spa pumps spanning eight different models.[1] Consumers were warned to "immediately stop using the recalled spa pumps" because the pumps could overheat and ignite the plastic housing, resulting in a fire and burn hazard. At the time of the recall, the CPSC was aware of at least three fires involving the defective spa pumps, including one house fire that occurred in January 2024 in Kansas City, Missouri which resulted in a fatality, and another that resulted in significant property damage. Additional fires reportedly involving the spa pumps were and continue to be investigated.

3. There is no dispute that the subject spa pumps are defective and that customers who bought them did not get what they paid for. Today, tucked away on a remote portion of Bestway's website that few people are likely to see, is a warning to customers to "**immediately** stop use of any affected pump" because it can "overheat, posing a fire hazard."[2] Thus, Bestway admits the spa pumps are unsuitable for their intended purpose and pose an unreasonable safety hazard.

4. And yet Bestway refuses to give customers their money back for these defective products. Instead, Bestway implemented a deficient recall that allows it to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

5. Any requests for full refunds are denied. A consumer has only two options: (1) receive a replacement spa pump made by Bestway, regardless of whether they continue to want one or to trust the manufacturer; or (2) receive a credit or gift card in an

---

[1] https://www.cpsc.gov/Recalls/2024/About-866000-AirJet-and-HydroJet-Spa-Pumps-Recalled-Due-to-Fire-Hazard-One-Death-Reported-Manufactured-by-Bestway-and-Sold-with-SaluSpa-Coleman-and-Hydro-Force-Spa-Liners

[2] https://bestwayusa.com/recall-and-safety

amount equal to less than 25% of the spa pumps' original purchase price. Given the breadth of the defect across Bestway's spa pump model lines – and the fact that initial reporting from customers shows that Bestway is replacing the defective spa pumps with *the exact same models* – any reasonable person would think twice about using a Bestway spa pump again whether that be a replacement or an original. What's more, these two options are available to only those consumers who still have the pump at home; consumers who already discarded the pump because they experienced overheating or other defects are left without recourse.

6.     By design, the recall received very little publication, with the result that the response rate has been low. An offer to replace spa pumps does little good when Bestway did the bare minimum possible to let people know about the offer. And for those who have responded, the internet is rife with consumer complaints about Bestway customer service being evasive, nonresponsive, dismissive, and seemingly difficult to reach by design. This approach benefits Bestway by minimizing the cost and burden of the recall.

7.     Plaintiffs, Franca Armstrong and Mandy Islam are filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Bestway's spa pumps are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

8.     Plaintiff Franca Armstrong is domiciled in Rome, New York and may be referred to later in this Complaint as the "New York Plaintiff." Ms. Armstrong purchased a Coleman SaluSpa Miami AirJet 2 to 4 Person Round Inflatable Hot Tub / Portable Outdoor Spa with a Bestway S100105 / P05332 spa pump from Amazon on June 24, 2023 for use in New York.

9.     Plaintiff Mandy Islam is domiciled in Oxnard, California and may be referred to later in this Complaint as the "California Plaintiff." Ms. Islam purchased a

Bestway SaluSpa Miami Inflatable Hot Tub / 4-Person AirJet Spa with a Bestway S100105 / P05332 spa pump from Amazon on April 20, 2021 for use in California. Within two months, the spa pump malfunctioned and Ms. Islam contacted Bestway, who sent her a replacement pump of the same model. Shortly thereafter, the replacement spa pump's heater malfunctioned and the pump's electrical plug melted. Bestway advised Ms. Islam that the pump was now out of its 6-month warranty, leaving her with a useless spa pump and no recourse. Ms. Islam disposed of the spa pump at that time.

10.     Before purchasing the spa pumps, Plaintiffs carefully reviewed the Amazon web listing for each product, including Bestway's pictures, item details and descriptions, product specifications and features, and other details. Bestway's materials failed to disclose the existence of the defect at issue in this action. The fact that the spa pumps are defective is material to each Plaintiff. If Bestway's product packaging, item description and details, images, and listed features and specifications had disclosed the defect, then neither Plaintiff would have purchased the spa pumps, or they would have purchased them on different terms.  Further, Ms. Islam experienced the defect at issue in this action—namely, her spa pump malfunctioned and the pump's electrical plug melted.

11.     Defendant, Bestway (USA) Inc., is an Arizona corporation with its principal place of business and headquarters at 3435 S. McQueen Rd., Chandler, Arizona. Defendant is the US affiliate of Bestway (Hong Kong) International Ltd., a corporation in Shanghai, China. Bestway designed, developed, manufactured, warranted, and monitored the performance of all of the spa pumps at issue here. Bestway also operates an online retail store where it sold and continues to sell the spa pumps at issue, which can be found at www.bestwayusa.com. Through this site, as well as Amazon, Costco, Walmart, Sam's Club, QVC, RuralKing, and Spreetail, Bestway was responsible for advertising, warranties, dissemination of owner's manuals and other consumer-facing documents, customer service, and monitoring performance of the products in the United States.

12.     At all relevant times, these retailers acted as agents of Bestway, working in conjunction to sell the products to their customers. All product packaging and consumer

1    disclosures (as well as omissions contained in those disclosures) were approved by

2    Bestway.

3                        **JURISDICTION AND VENUE**

4         13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C.

5    § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all

6    members of the proposed class are in excess of $5,000,000.00, exclusive of interest and

7    costs, and at least one member of the proposed class is citizen of a state different from

8    Defendant.

9         14.    This Court has general jurisdiction over Defendant because it is

10    headquartered in Arizona, and has a principle place of business in Arizona. Further, the

11    Court has general jurisdiction over Defendant because Defendant conducts substantial

12    business within Arizona such that Defendant has significant, continuous, and pervasive

13    contacts with the State of Arizona.

14        15.    Venue is proper in this District under 28 U.S.C. § 1391 because a

15    substantial part of the events, omissions, and acts giving rise to the claims herein

16    occurred in this District and because Defendant is headquartered in this District.

17                        **FACTUAL ALLEGATIONS**

18        16.    **Product at issue:**  the spa pumps at issue in this case were sold separately,

19    or in a package with an inflatable spa liner, under the brand names SaluSpa, Coleman,

20    and/or Hydro-Force. The recall includes AirJet and HydroJet spa pump model numbers

21    P05332, P05339, P05711, P05807, P07000, P07001, P05511, P07034, and P07572.

22    "Bestway" and the model number are printed on the label on the side or back of the spa

23    pump.

24        17.    The spa pumps were sold together with spa liners online at Bestway USA,

25    Amazon, Costco, Walmart, Sam's Club, QVC, RuralKing, and Spreetail, and at other

26    stores nationwide from at least as early as April 2021 for between $400 and $790.

27        18.    **Defect at issue:**  As stated by Defendant, "the spa pumps can overheat,

28    posing a fire hazard."

19.     The CPSC similarly describes the defect as follows: " Hazard:  The recalled AirJet and HydroJet spa pumps can overheat causing the plastic housing to ignite, posing a fire hazard."

20.     The defect affects all of the products at issue. Defendant has instructed consumers to "**immediately** stop use of any affected pump" regardless of whether their particular product appears to be ok.

21.     The cause of the defect is the same for all of the products at issue.

22.     **Relevant time period:**  All of the omissions at issue here were uniformly and consistently made at all times during the last four years, at least.  There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

23.     **The omissions:**  Defendant described the products as spa pumps which help power jets and move and heat the water. However, Defendant failed to disclose that due to a defect in the materials, workmanship, and/or design, the spa pump was prone to overheating and igniting its plastic housing.

24.     The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material.

25.     Plaintiffs and class members would not have bought the spa pumps, or would not have bought them on the same terms, if the defect had been disclosed. The materiality of the defect also is demonstrated by the existence of the recall.

26.     Defendant did not disclose the defect on the product packaging, the product page of its website, the owner's manual, the product pages of other retailers who acted as Defendant's agents, or in any other customer-facing document. To the extent the products were sold at brick-and-mortar locations, such as Costco and Walmart, sales personnel and customer service representatives did not disclose the defect.

27.     At the time of purchase, Plaintiffs and class members did not know and did not have reason to know that the spa pumps were defective. Defendant had exclusive knowledge of that fact.

28.     Defendant made partial representations to Plaintiffs and class members, while suppressing the safety defect. Specifically, by displaying the spa pump alongside a spa liner and describing the pump's function (e.g., "releases warm air into the water, surrounding you with a calming bubble massage," and "equipped with a pump that quickly inflates the spa, heats it up, runs filtration and controls the massage system, this spa is both easy and convenient"), the product packaging and product webpages implied that they were suitable as spa pumps, without disclosing that they had a critical safety-related defect related to the pump.

29.     **Defendant's Pre-sale Knowledge of the Defect**:

30.     Defendants were aware of the defect at the time of sale, and in no event later than January 2024.

31.     Before the products were first launched, Defendant knew about the defect because of pre-release testing.

32.     After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, and field reports. Defendant knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

33.     The customer complaints about the spa pumps also would have put Defendant on notice of the defect and contributed to its pre-sale knowledge of the defect, because the defect is the same or substantially similar in all material respects. The number of complaints about the defect was unusually high relative to the total number of products sold.  The fact that so many owners made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the spa pumps. The reports and complaints from owners were similar enough to put Defendant on notice that the incidents described were the result of a defect, and that the spa pumps were experiencing unusually high levels of complaints.

34.     Defendant also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

35.     **Presuit notice**: On October 9, 2024, Plaintiffs provided pre-suit notice via certified mail in a letter that complied with all applicable notice requirements. Defendant's counsel received that notice the same day via email, and responded that same day confirming receipt.

36.     **No Adequate Remedy At Law:**

37.     Plaintiffs and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

38.     Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

39.     Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

40.     Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiffs seek non-restitutionary disgorgement of profits in connection with their unjust enrichment claims.

41.     Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

42.     In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

43.     **The Recall Does Not Render This Lawsuit Moot**:

44.     The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

45.     Under the recall, Defendant will only provide a replacement spa pump made by Bestway, or a gift card/credit amounting to less than 25% of the original purchase price ($100 for consumers who purchased an AirJet spa pump or $189 for consumers who purchased a HydroJet spa pump). No cash refunds are provided, partial or otherwise. These options are not viable for people like Plaintiffs who either no longer trust the reliability of Bestway's spa pumps in general, or no longer have the spa pump because they disposed of it due to the defect.

46.     The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1). That is more than the gift card/credit amount provided for under the recall. Similarly, New York's General Business Law § 350 provides for statutory damages of $500 per unlawful sale, which also is greater than made available under the recall.

47.     The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## CLASS ALLEGATIONS

48.     *Class Definition*: Plaintiffs brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

(a).    Nationwide Class: all people in the United States who purchased a subject spa pump.

(b).    Multi-State Implied Warranty Class: all persons who purchased a subject spa pump for personal, family, or household use: (1) in Alaska, Arkansas,

California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

(c).    Multi-State Consumer Protection Class: all persons who purchased a subject spa pump for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

(d).    California Subclass: all people who purchased a subject spa pump in California.

(e).    New York Subclass: all people who purchased a subject spa pump in New York.

49.    Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

50.    Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

51.     ***Numerosity.***  Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its agents, or other means.

52.     ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include, but are not limited to:

(a)     Whether Defendant knew or should have known of the defect at issue in this case, and if so, when it discovered the defect;

(b)     Whether knowledge of the defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

(c)     Whether Defendant failed to disclose and concealed the existence of the defect from potential customers;

(d)     Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

53.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., California's Consumer Legal Remedies Act ("CLRA"), Cal Civ. Code §§ 1750, *et seq*., California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and California's Song-Berverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*

54.     With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual

members include whether Defendant violated the New York General Business Law § 349 and § 350.

55.    **Typicality.** Plaintiffs' claims are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiffs and all others similarly situated that the products at issue here can be dangerous.

56.    **Adequacy**. Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classses. Plaintiffs have no interests that are antagonistic to those of the Classes. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

57.    **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

58.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

## <u>COUNT I</u>

**Violations of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

59.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

60.     California Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the California Subclass.

61.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

62.     Defendant acted with knowledge and intent.

63.     California Plaintiff alleges a claim under all three prongs of the UCL.

64.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

65.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

66.     California Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

67.     As a direct and proximate result of Defendant's unfair and deceptive practices, California Plaintiff and the other members of the Multi-State Consumer Protection Class and the California Subclass have suffered out-of-pocket losses.

68.     California Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

69.     California Plaintiff seeks all relief available under the UCL.

## COUNT II

### Violations of California's Consumer Legal Remedies Act ("CLRA")

### Cal. Civ. Code §§ 1750, *et seq.*

70.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

71.     California Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the California Subclass.

72.     Each Defendant is a "person" as defined by California Civil Code § 1761(c).

73.     California Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

74.     For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

75.     California Plaintiff provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

76.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

77.     Defendant acted with knowledge and intent.

78.     Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

79.     With respect to restitution under the CLRA claim, California Plaintiff alleges in the alternative that she and Class Members lack an adequate remedy at law for the reasons already alleged above.

80.     As a result of Defendant's misconduct, California Plaintiff and other Class Members have suffered monetary harm.

81.     Plaintiff seeks all relief available under this cause of action, other than damages.  Plaintiff may amend the Complaint in the future to add a damages claim.

### COUNT III

### Violation of California's False Advertising Law

### Cal. Bus. & Prof. Code § 17500, *et seq.*

82.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

83.     California Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the California Subclass.

84.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

85.     Defendant has represented and continues to represent to the public, including California Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass, through its deceptive packaging, that the spa pumps are free of the defect alleged herein, are fit for the purpose for which the spa pump would be used, and conform to the promises or affirmations of fact made on the package or label and advertising materials. Because Defendant has disseminated misleading information regarding the spa pumps, and Defendant knows, knew, or should have known, through the exercise of reasonable care, that the representations Defendant made are false and misleading, Defendant has violated the FAL.

86.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from California Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass. California Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to her

and members of the Multi-State Consumer Protection Class and the California Subclass
to disgorge the profits Defendant made on these transactions, and to enjoin Defendant
from violating the FAL or violating it in the same fashion in the future as discussed
herein. Otherwise, California Plaintiff and members of the Multi-State Consumer
Protection Class and the California Subclass may be irreparably harmed and/or denied an
effective and complete remedy.

87.     California Plaintiff and members of the Multi-State Consumer Protection
Class and the California Subclass have no adequate remedy at law and are therefore
entitled to restitution, disgorgement, and/or the imposition of a constructive trust to
recover the amount of Defendant's ill-gotten gains, and/or other sums as may be just and
equitable.

## <u>COUNT IV</u>

### Violation of Song-Berly Consumer Warranty Act

### Cal. Civ. Code § 1790, *et seq.*

88.     Plaintiffs incorporate and reallege each preceding paragraph as though fully
set forth herein.

89.     California Plaintiff brings this cause of action individually and on behalf all
other class members in the Multi-State Consumer Protection Class and the California
Subclass.

90.     The spa pumps are "consumer goods" and California Plaintiff and Class
Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

91.     Each Defendant is a "manufacturer," "distributor," and/or "retail seller"
under Cal. Civ. Code § 1791.

92.     The implied warranty of merchantability included with the sale of each spa
pump means that Defendant warranted that spa pump (a) would pass without objection in
trade under the contract description; (b) was fit for the ordinary purposes for which the
spa pump would be used; and (c) conformed to the promises or affirmations of fact made
on the container or label.

93.     The spa pumps would not pass without objection in the trade because they contain the above-described defect, which also makes them unfit for the ordinary purpose for which they would be used.

94.     The spa pumps are not adequately labeled because their labeling fails to disclose the defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

95.     The spa pumps were not sold on an "as is" or "with all faults" basis.

96.     Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

97.     Defendant's actions have deprived California Plaintiff and Class Members of the benefit of their bargains and have caused the spa pumps to be worth less than what California Plaintiff and other Class Members paid.

98.     As a direct and proximate result of the breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Class Members have been damaged by the diminished value of their spa pumps.

99.     Under Cal. Civ. Code §§ 1791.1(d) and 1794, California Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the spa pumps or the overpayment or diminution in value of their products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

100.    California Plaintiff seeks all relief available under this cause of action.

## COUNT V

### Violation of New York General Business Law § 349

101.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

102.    New York Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the New York Subclass.

103.    New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

104.    In their sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

105.    New York Plaintiff and members of the Multi-State Consumer Protection Class and the New York Subclass are consumers who purchased the spa pumps from Defendant for their personal use.

106.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the spa pumps (a) would not contain a dangerous defect and (b) are generally recognized as safe for use. Defendant intentionally concealed and omitted material facts regarding the true nature of the spa pumps.

107.    The foregoing deceptive acts and practices were directed at consumers.

108.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the spa pumps to induce consumers to purchase the same.

109.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

110.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages New York Plaintiff and members of the Multi-State Consumer Protection Class and the New York Subclass have sustained from having paid for and used Defendant's products.

111.    As a result of Defendant's violations, New York Plaintiff and members of the Multi-State Consumer Protection Class and the New York Subclass have suffered

damages because: (a) they would not have purchased the spa pumps on the same terms if they knew that the spa pumps had a dangerous defect; (b) they paid a premium price greater than the amount offered in the Recall; and (c) the spa pumps do not have the characteristics, uses, benefits, or qualities as promised.

112.    On behalf of herself and other members of the Multi-State Consumer Protection Class and the New York Subclass, New York Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney fees.

## COUNT VI

### Violation of New York General Business Law § 350

113.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

114.    New York Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the New York Subclass.

115.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

116.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

117.    Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

118.    Defendant's false, misleading, and deceptive statements and representations of fact were and are directed toward consumers. Defendant also actively concealed and knowingly admitted material facts regarding the true nature of the spa pumps.

119.    Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

120.    Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

121.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, New York Plaintiff and the members of the Multi-State Consumer Protection Class and the New York Subclass have suffered and continue to suffer economic injury.

122.    As a result of Defendant's violations, New York Plaintiff and members of the Multi-State Consumer Protection Class and the New York Subclass have suffered damages due to said violations because: (a) they would not have purchased the spa pumps on the same terms if they knew that the spa pumps had a dangerous defect and are not safe for use; (b) they paid a premium price in the amount greater than the amount offered in the Recall; and (c) the spa pumps do not have the characteristics, uses, benefits, or qualities as promised .

123.    On behalf of herself and other members of the Multi-State Consumer Protection Class and the New York Subclass, New York Plaintiff seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney fees.

## <u>COUNT VII</u>

### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

124.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

125.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

126.    The spa pumps are consumer products as defined in 15 U.S.C. § 2301(1).

127.    Plaintiffs and the Class Members are consumers as defined in 15 U.S.C. §

2301(3).

128.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

129.    In connection with the marketing and sale of the spa pumps, Defendant impliedly warranted that the products were fit for use as spa pumps. The products were not fit for use as spa pumps due to the defect described in the allegations above.

130.    By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and Class Members.

131.    Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the products if they knew the truth about the defective nature of the products.

<u>COUNT VIII</u>

**Breach of Implied Warranty**

132.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

133.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

134.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the products would be used; and conformed to the promises or affirmations of fact made on the container or label.

135.    Defendant breached its implied warranty because the products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue; and they are

unfit for their ordinary purpose. As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

136.    Plaintiffs and Class Members purchased the products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

137.    The products were defective when they left the exclusive control of Defendant.

138.    Plaintiffs and Class Members did not receive the goods as warranted.

139.    The spa pumps were not sold on an "as is" or "with all faults" basis.

140.    Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

141.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the products were dangerous; and (b) the products do not have the characteristics, uses, or benefits as promised by Defendant.

142.    Plaintiffs seek all relief available under this cause of action.

## COUNT IX

### Unjust Enrichment

143.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

144.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

145.    To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

146.    The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

147.    Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiffs and Class Members paid to Defendant.

148.    Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

149.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the products were dangerous. This caused injuries to Plaintiffs and class members because they would not have purchased the products or would have paid less for them if the true facts concerning the products had been known.

150.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the products.

151.    Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

152.    Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the spa pumps.

153.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered in an amount to be proven at trial.

154.    Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

155.    Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT X

### Fraud by Omission / Intentional Misrepresentation

156.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

157.    Plaintiffs bring this cause of action individually and on behalf all other Class Members.

158.    This claim is based on fraudulent omissions concerning the safety of consumers who use the spa pumps. As discussed above, Defendant failed to disclose that the spa pumps had a dangerous defect.

159.    The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor who knew of reports of the spa pumps' defective and dangerous nature. Nonetheless, Defendant continued to sell its worthless spa pumps to unsuspecting consumers.

160.    The false and misleading omissions were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the spa pumps.

161.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

162.    Plaintiffs seek all relief available under this cause of action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.  For an order certifying the classes alleged in this complaint, naming Plaintiffs as the representatives of their respective classes, and naming Plaintiffs' counsel as Class Counsel to represent the classes;

b.  For an order declaring Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiffs and class members on all counts asserted herein;

d.  For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiffs and the class members, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above;

e.  For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

f.  For prejudgment interest on all amounts awarded;

g.  For an order of restitution and all other forms of equitable monetary relief;

h.  For an order awarding Plaintiff and class members their reasonable attorney fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  October 17, 2024

Respectfully submitted,

 */s/ Amy Wilkins Hoffman*

**HOFFMAN LEGAL, LLC**
Amy Wilkins Hoffman (AZ Bar No. 022762)
99 E. Virginia Ave., Ste 220
Phoenix, AZ 85004
E-Mail: ahoffman@hoffmanlegalaz.com
Phone: 480-466-7005

**SMITH KRIVOSHEY, PC**
Joel D. Smith (*pro hac vice* to be filed)
Aleksandr "Sasha" Litvinov (*pro hac vice* to be filed)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
E-Mail: joel@skclassactions.com
E-Mail: sasha@skclassactions.com
Phone: 617-377-7404

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (*pro hac vice* to be filed)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
E-Mail: yeremey@skclassactions.com
Phone: 415-839-7000

*Attorneys for Plaintiffs*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Amy Wilkins Hoffman, declare as follows:

2.    I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

3.    I am the attorney for Plaintiffs in the above-captioned action.

4.    I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

5.    The Class Action Complaint has been filed in the proper place for trial of this action.

6.    It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on October 17, 2024 in Phoenix, AZ.


By:   */s/ Amy Wilkins Hoffman*
Amy Wilkins Hoffman