**SMITH KRIVOSHEY, PC**
Joel D. Smith, SBN 244902 (*pro hac vice*)
Yeremey O. Krivoshey, SBN 295032 (*pro hac vice*)
Aleksandr "Sasha" Litvinov, SBN 95598 (*pro hac vice*)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
E-Mail: joel@skclassactions.com
       yeremey@skclassactions.com
       sasha@skclassactions.com
Phone: 415-839-7000

**FROST LLP**
Amy Wilkins Hoffman (AZ Bar No. 022762)
3200 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
E-Mail: amyh@frostllp.com
Phone: 480-466-7005

*Attorneys for Plaintiffs*

[Additional counsel in signature block]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Franca Armstrong, et al.,<br><br>                     Plaintiffs,<br>    v.<br><br>Bestway (Usa) Inc.,<br><br>                    Defendant. | Case No. 2:24-CV-02812-PHX-SHD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing: July 10, 2025, 1:30 p.m.<br>Courtroom: 502 |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on July 10, 2025, at 1:30 p.m., in Courtroom 502, before the Honorable Sharad H. Desai of the United States District Court, District of Arizona, Plaintiffs Franca Armstrong, Mandy Islam, and Danielle Harper ("Plaintiffs") shall move this Court for preliminary approval of the Class Action Settlement Agreement attached as Exhibit A to the accompanying Memorandum of Law in Support Thereof.

Plaintiffs respectfully request the entry of an Order: (1) preliminarily approving the proposed Settlement Agreement; (2) preliminarily certifying a proposed national class for settlement purposes only, and appointing Plaintiffs and their Counsel as settlement Class Representatives and Class Counsel; (3) approving the notice plan and forms of notice to the class because they meet the requirements of due process and is the best notice practicable under the circumstances (*see* Fed. R. Civ. P. 23(c)); and (4) setting dates and procedures for opt outs, objections, and a final approval hearing.

This Motion is based on this notice, the following Memorandum of Law, the Declarations of Joel D. Smith and Jacob Kamenir, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of the Settlement with their moving papers.

1
2

## <u>**TABLE OF CONTENTS**</u>

3

I.    INTRODUCTION.................................................................................... 1

4

II.   PROCEDURAL BACKGROUND…………………………………………… ……..2

5

III.  TERMS OF THE SETTLEMENT AGREEMENT ................................... 3

6

   A.  The Settlement Class .................................................................... 3

7

   B.  Relief for the Settlement Class Members.................................... 3

8

   C.  The Release .................................................................................... 5

9
10

   D.  Administration Fees, Attorney's Fees, Expenses, and Class Representatives' Incentive Award.................................................................................... 5

11

   E.  Settlement Administration and The Notice Plan....................... 6

12
13

IV.   THE SETTLEMENT IS FAIR, ADEQAUTE, AND REASONABLE AND MERIT PRELIMINARY APPROVAL ................................................... 7

14

   A.  The Class Has Been Adequately Represented .......................... 7

15

   B.  The Proposed Settlement Was Negotiated at Arm's Length.................................. 8

16

   C.  The Relief Provided For The Class Is Adequate ...................... 9

17

   D.  The Costs, Risks, And Delay Of Trial And Appeal ................. 9

18
19

   E.  The Effectiveness Of The Method Of Distributing Relief To The Class.............. 10

20

   F.  The Terms Of Any Proposed Award Of Attorney's Fees ..................... 10

21

   G.  Any Other Agreement Required To Be Identified Under Rule 23(E)(3).............. 11

22

   H.  The Proposed Settlement Treats Class Members Equitably ................................. 11

23
24

V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT AND APPOINT CLASS COUNSEL...................... 12

25

   A.  The Requirements of Rule 23(a) Are Satisfied ..................................... 12

26

       1)  Numerosity.......................................................................... 12

27

       2)  Commonality ...................................................................... 12

28

3)   Typicality ................................................................................ 13

4)   Adequacy ................................................................................ 13

B.   The Class Should Be Certified Under Rule 23(b)(3) for Settlement Purposes ...... 14

C.   The Proposed Notice and Notice Program Complies with Rule 23 and Due Process 15

D.   Class Counsel Should Be Appointed ...................................................... 16

VI.     CONCLUSION ................................................................................ 16

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*AdTrader, Inc. v. Google LLC*,
    2021 WL 2073816 (N.D. Cal. Mar. 23, 2021) ............................................................ 16

*Briseno v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ................................................................................. 7, 8

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004). ....................................................................................... 9

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*),
    213 F.3d 454 (9th Cir. 2000) ....................................................................................... 9

*Feinberg v. T. Rowe Price Grp., Inc.*,
    610 F. Supp. 3d 758 (D. Md. 2022) ........................................................................... 10

*Grady v. RCM Techs., Inc.*,
    671 F. Supp. 3d 1065 (C.D. Cal. 2023) ...................................................................... 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1026 (9th Cir. 1998). ................................................................. 9, 13, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................................... 8

*In re Flint Water Cases*,
    571 F. Supp. 3d 746 (E.D. Mich. 2021) ....................................................................... 8

*Kim v. Allison*,
    8 F.4th 1170, 1178 (9th Cir. 2021). ........................................................................ 9, 10

*Lowery v. Rhapsody Int'l, Inc.*,
    75 F.4th 985 (9th Cir. 2023) ...................................................................................... 11

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ....................................................................................... 9

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................................................... 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................................... 15

*Zwicky v. Diamond Resorts Mgmt. Inc.*,
  343 F.R.D. 101, 119 (D. Ariz. 2022)..............................................................12

Rules

Fed. R. Civ. P. 23.....................................................................................Passim

Other Authorities

4 *Newberg on Class Actions* § 13:50 (6th ed. 2022) ...........................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

This proposed class action settlement would resolve the claims of purchasers of Defendant Bestway (USA) Inc.'s recalled spa pumps. Plaintiffs asserted multiple consumer protection and common law claims under the laws of California, New York, and South Carolina.  The settlement enhances the existing recall by providing up to **$2,000,000** in additional *cash* benefits for the Class, an extended warranty for class members who receive a replacement pump through the existing recall valued at **well over $8 million**, and provides multiple rounds of direct notice as well as a robust digital notice plan to incentivize as many consumers as possible to get dangerous recalled products out of their homes and receive compensation on top.  The settlement was only reached after three contentious mediations before Hon. James L. Warren (Ret.) JAMS and months of additional negotiations with Judge Warren's assistance.  It is a good result for the Class.

The Settlement satisfies the relatively low threshold required for preliminary approval. The parties reached the Settlement after significant arm's-length negotiations with the assistance of a mediator.  The Settlement provides substantial monetary recovery, above and beyond what Defendant's voluntary recall provided, while avoiding the additional expenses, risk and uncertainty of continued and protracted litigation.  All benefits under the Settlement are provided *in addition to* benefits provided through the recall, meaning that class members get the benefits of relief through the recall process and additional benefits through the Settlement.

Plaintiffs respectfully request the entry of an Order: (1) preliminarily approving the proposed Settlement Agreement; (2) preliminarily certifying a proposed national class for

settlement purposes only, and appointing Plaintiffs and their Counsel as settlement Class Representatives and Class Counsel; (3) approving the notice plan and forms of notice to the class because they meet the requirements of due process and is the best notice practicable under the circumstances (*see* Fed. R. Civ. P. 23(c)); and (4) setting dates and procedures for opt outs, objections, and a final approval hearing.

## II.    PROCEDURAL BACKGROUND

On September 12, 2024, Defendant and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of over 860,000 spa pumps spanning eight different models due to a defect that could cause the pumps to overheat and ignite the plastic housing, creating a fire hazard. Plaintiffs allege Defendant's recall efforts were inadequate, offering consumers only two options: receive a replacement pump or receive a gift card/credit worth less than 25% of the original purchase price of the spa system. *See* June 11, 2025 Declaration of Joel D. Smith ("Smith Decl.") at ¶ 5.

Plaintiff Danielle Harper filed a class action against Defendant on September 27, 2024, entitled *Harper v. Bestway USA, Inc*., Civil Action No. 2:24-cv05193, in the United States District Court for the Eastern District of Pennsylvania (the "*Harper* Action"), asserting claims arising from an alleged defect that prompted the recall. Plaintiffs Franca Armstrong and Mandy Islam asserted similar claims as the *Harper* Action when they filed the above-captioned matter in this Court on October 17, 2024 (the "*Armstrong* Action).

Between December 12, 2024 and January 14, 2025, the parties attended three separate mediations before the Hon. James Warren. *See* Smith Decl. at ¶¶ 8-9. The parties ultimately reached a settlement in principle. *Id.* The parties agreed to further extend

defendant's deadline to respond to the complaint, so that the parties had sufficient time to finalize the class settlement. *Id.* at ¶¶ 9-10.

During this period, counsel in the two actions worked cooperatively. To streamline the litigation and avoid unnecessary burdens on the courts, Plaintiffs filed an amended complaint in the *Armstrong* Action on April 7, 2025, adding the claims asserted by Danielle Harper and adding her as a party. *See id.* at ¶ 11. The First Amended Complaint asserts numerous common law and statutory causes of action including violations California's Unfair Competition Law ("UCL"); New York's General Business Law § 350; South Carolina's Unfair Trade Practices Act; and the Magnuson-Moss Warranty Act. On April 21, 2025, Defendant filed an Answer, asserting numerous affirmative defenses.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

The Parties agree to certification of a nationwide Settlement Class defined as all people who purchased a Class Product during the Class Period. *See* Smith Decl., Ex. 1 at §§ II(I), p. 3, and XI(A), p. 27. The Class Period is May 2021 through May 2024, when the affected products were sold. *See id.* at § II(N), p. 4.

### B.    Relief for the Settlement Class Members

The relief made available to any Class Member depends on the remedy the Class Member selected in the Spa Pump Recall. *See id.* at § IV, pp. 12-14.

First, Class Members who received a replacement pump in the Spa Pump Recall will **automatically** receive a one-year extension to the Bestway Limited Warranty (https://bestwayusa.com/ourwarranties) for a replacement pump received in the Spa Pump

Recall, **without need to submit a Claim Form**. *See id.* at § IV(C)(1), pp. 12-13. The value for each class member receiving the one-year warranty is estimated at about $60. Smith Decl. at ¶ 15. Bestway has stipulated in the Settlement that the value of the one-year extension to the Bestway Limited Warranty for all such Class Members who received a replacement pump in the Spa Pum Recall is "at least $8 million." *See* Smith Decl., Ex. 1 at § IV(C)(1), p. 13. However, the actual value may be substantially higher given the number of Class Members who received a replacement pump in the Spa Pump Recall.

Second, Class Members who either received a cash payment through the recall or who no longer have the Class Product in their possession are eligible to receive a cash payment of $75. *See id.* at §§ IV(D) and (E), p. 13. Class Members must participate either in the Spa Pump Recall or submit a valid proof of purchase of the Class Product with their Claim Form if they no longer possess the Class Product and did not previously participate in the Spa Pump Recall. *See id.* at §§ IV(A) and (E), pp. 12-13. Class Members who still have their Class Product in their possession and have not participated in the Spa Pump Recall and wish to receive a cash payment under this Agreement must initially participate in the Spa Pump Recall process. *See id.* at § IV(A), p. 12. In this way, the settlement supports the existing recall and helps to remove potentially dangerous products from circulation by proving additional incentive to participate in the recall.

Subject to Section IV(F)(1) of the Settlement, the total value of the cash payments to the Class Members is capped at $2,000,000. *See id.* at § IV(F)(1), p. 13. The cash payment paid to each Class Member who submits a timely, valid Claim Form will be

reduced on a pro rata basis if the total amount of valid claims for cash payments submitted to the Settlement Administrator plus plaintiff incentive awards exceeds $2,000,000. *Id*.

## C.    The Release

The Settlement Agreement provides that upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties concerning the Class Products. *See id.* at § VII, p. 18-20. Plaintiffs and Class Members are not releasing any claims for personal injuries.

## D.    Administration Fees, Attorney's Fees, Expenses, and Class Representatives' Incentive Award

All expenses incurred in administering this Settlement Agreement, including the cost of the Class Notice, and the cost of distributing and administering the benefits of the Settlement Agreement, will be paid separately by Defendant separately from any relief provided by the Class. *See id.* at § VI(A), p. 17. The same is true for the attorneys' fees and costs. These expenses will not count against the $2,000,000 Cash Cap. *See id.*

In recognition of the time the representative Plaintiffs expended in pursuing this action and making the settlement possible, Class Counsel will submit an application for an incentive award of $2,500.00 dollars to each Plaintiff. *See id.* at § VI(B), p. 17.

The Settlement permits Class Counsel to apply for an award of attorneys' fees, inclusive of costs and expenses, of up to $807,591.00. *See id.* at § VI(C), pp. 17-18. If the Court orders an award of attorneys' fees, costs, and expenses in a total amount less than $807,591.00, the difference between the amount awarded to Class Counsel and

$807,591.00 shall be distributed pro rata to each Class Member who has submitted a valid claim for a cash payment as stated in Section IV. *See id.* at § VI(C)(1), p. 17-18.

**E.    Settlement Administration and The Notice Plan**

Subject to the approval of the Court, Defendant shall retain Simpluris, Inc. as the Settlement Administrator to help implement the terms of the Agreement. *See id.* at § VIII(A), p. 20. Simpluris is an experienced class action administrator that has successfully managed numerous nationwide consumer class action settlements. *See* June 10, 2025 Declaration of Jacob Kamenir, Vice President of Legal Notice at Simpluris, attached hereto (discussing relevant experience, the notice program, privacy and security, award disbursement, etc.). Subject to the terms and conditions of the Agreement, Defendant shall pay all costs associated with the Settlement Administrator, including costs of providing Class Notice and reviewing and processing claims. *See* Smith Decl., Ex. 1 at § VIII(A), p. 20.

The Notice Plan is robust. *See id.* at § V, p. 14-17. First, direct notice will be provided by email and mail to all Class Members whose email or home addresses are available to Defendant or obtained from Defendant's retailers. *Id.* at § V(B), p. 14-15. Second, the Settlement Administrator will implement an online advertising notice program designed to ensure that at least 80 percent of the Class received actual notice. *Id.* at § V(C), p. 15. Third, a reminder notice will be provided by email 60 days after the Notice Date to all Class Members that had not yet submitted a Claim Form, objection, or opted out. *Id.* at § V(D), p. 15.

The Settlement Administrator shall be responsible for all the things settlement administrators typically do in class settlements, such as disseminating notice, setting up a settlement website, responding to inquiries from class members, and implementing the claim review process and payment of claims.  *Id*. at § VIII(B), p. 20; § VIII(C), pp. 20-21.

The Claim Form shall be available for downloading and may be completed and submitted online at the Settlement Website, and, at Class Counsel's option, the Claim Form will be available for downloading on Class Counsel's websites.  *See id.* at § VIII(E), p. 21. The Claim Form may also be requested by calling the toll-free number provided by the

## IV.    THE SETTLEMENT IS FAIR, ADEQAUTE, AND REASONABLE AND MERIT PRELIMINARY APPROVAL

"At the preliminary approval stage, courts need only evaluate "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious-deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." Rule 23(e)(2), in turn, directs consideration of a variety of factors courts may consider when evaluating preliminary approval.  *See* Fed. R. Civ. P. 23(e)(2); *see also Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (describing the Ninth Circuit's eight factor test as "fall[ing] within the ambit of the revised Rule [23(e)]").  Each of the Rule 23(e)(2) factors is addressed below.

### A.    The Class Has Been Adequately Represented

Class Counsel are highly qualified lawyers with extensive experience successfully prosecuting complex cases and consumer class actions and are frequently appointed lead

class counsel by courts throughout the country. *See* Smith Decl. at ¶ 20 and Exs. 2 and 3, Firm Resumes of Smith Krivoshey, PC and Poulin | Willey | Anastopoulo, LLC.  Class Counsel is well-versed in the applicable law and are well positioned to assess the benefits of the proposed settlement against the risks of further litigation.  *See id*.

## B.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23 directs courts to watch for any signs of collusion, such as a settlement that benefits counsel at the expense of the class. *See* 4 *Newberg on Class Actions* § 13:50 (6th ed. 2022); *Briseno*, 998 F.3d at 1023; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Settlement bears no hallmark of collusion, such as a clear sailing provision, disproportionate payment of the settlement amount to counsel, or a reverter.  For example, the Settlement provides that "Should the Court order an award of attorneys' fees, costs, and expenses in a total amount less than $807,591.00, the difference between the amount awarded to Class Counsel and $807,591.00 shall be distributed pro rata to each Class Member who has submitted a valid claim for a cash payment." *See* Smith Decl., Ex. 1 at § VI(C)(1), p. 17.  That means any unawarded fees will flow directly as cash to Class Members, and will not revert to Defendant.  Further, the bulk of the benefits of the Settlement – the extended warranties valued at well over $8,000,000 – will be provided to qualifying Class Members *automatically*, without a claims process.

Also, there is "no better evidence" of a "truly adversarial bargaining process" than the presence of a neutral third-party mediator. *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021).  Here, the involvement of the Hon. James L. Warren. Ret. as

mediator **in three separate mediation sessions** further confirms that the Settlement was reached at arms' length. *See* Smith Decl. at ¶¶ 8-10, 21-25.

### C.    The Relief Provided For The Class Is Adequate

Rule 23(e) factors next look to the substantive fairness of the proposed settlement, taking into account various factors such as the risks of litigation.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), Advisory Committee's Note to 2018 Amendment; *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements usually provide only a fraction of potential recovery. It is the very nature of a settlement that a litigant must compromise the amount they are willing to pay or receive, so "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Here, if approved by the Court, the settlement provides for an automatic one-year extension to the Bestway Limited Warranty with an estimated value of more than $8 million, and cash payments of up to $75 to Class Members who submit a valid Claim form. *See id.* at §§ IV and VI.

### D.    The Costs, Risks, And Delay Of Trial And Appeal

The risk of continued litigation must be balanced against the certainty and immediacy of recovery from the settlements. *See Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). If settlement approval were denied and litigation were to

resume, it would be costly, complex, and this matter would remain on the docket for years to come. There would undoubtedly be a contested class certification motion, *Daubert* motions, interlocutory review under Rule 23(f), summary judgment, and potentially a trial. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources. For all of these reasons, this factor weighs strongly in favor of preliminary approval. Class Counsel possess an extensive background in consumer litigation. In Class Counsel's view, further litigation would be contrary to the Class's interests, given the benefits provided by the Settlement, and the risk that trial might result in a lesser recovery or a judgment that is simply uncollectable. *See Kim*, 8 F.4th at 1178 (noting that "the experience and views of counsel" is a factor in weighing approval of a class settlement).

### E.   The Effectiveness Of The Method Of Distributing Relief To The Class

Notice of a settlement must be issued in a manner that will "fairly apprise the prospective members of the class of the terms of the proposed settlement[, ] of the options that are open to them in connection with the proceedings[, and] afford them an opportunity to present their objections." *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 766 (D. Md. 2022). Here, the notice of settlement will be distributed fairly and equitably among all class members, and will provide interested parties an opportunity to present their objections. *See* Smith Decl., Ex. 1 at § V, pp. 14-16.

### F.   The Terms Of Any Proposed Award Of Attorney's Fees

The court may award "reasonable" attorney's fees and nontaxable costs under Rule 23(h) of the Federal Rules of Civil Procedure. In a class action where monetary

compensation is provided to the class, courts have discretion in deciding whether to use a lodestar or a percentage of recovery method in calculating a reasonable fee. Regardless, the "touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023).

Here, counsel worked diligently and competently with the goal of benefiting the class. *See generally* Smith Decl. at ¶¶ 5-19, 21-25. Counsel's efforts created, discovered, increased, or preserved the class's ultimate recovery. Furthermore, the benefit from this litigation was substantial, valued at well over $10 million dollars. The requested fees of $807,591.00 are less than 10% of the settlement value, and if the Court awards a lesser amount, the difference will be distributed pro rata to class members who submitted a valid claim for cash payment. Smith Decl., Ex. 1 at § VI(C), pp. 17-18. No fees and expenses will be paid until after the Effective Date. *Id*. at VI(D), p. 18.

## G.    Any Other Agreement Required To Be Identified Under Rule 23(E)(3)

There are no other responsive agreements.

## H.    The Proposed Settlement Treats Class Members Equitably

"In determining whether a proposed settlement treats class members equitably relative to each other, courts also consider whether the method of distribution or allocation of the settlement proceeds is fair, reasonable, and adequate." *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1082 (C.D. Cal. 2023). As described in Section III.B above, the proposed distribution formula will provide cash payments to Class Members that participate in the Spa Pump Recall or submit a valid proof of purchase of the Class Product with their Claim Form if they no longer have the Class Product in their possession. This

apportionment of relief among Class Members takes appropriate account of differences among their claims and ensures participating Class Members are adequately compensated.

## V. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT AND APPOINT CLASS COUNSEL

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. Here, the Settlement Class meets all requirements for certification under Rule 23.

### A. The Requirements of Rule 23(a) Are Satisfied

#### 1) Numerosity

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, a "class of 41 or more is usually sufficiently numerous." 5-23 Moore's Federal Practice—Civil § 23.22 (2016). Defendant's spa pumps have been sold online and through multiple brick-and-mortar retailers to over 860,000 consumers. *See* Plfs.' First Amended Complaint ("FAC"), ECF No. 29, at ¶ 2. Thus, the numerosity requirement is easily met here.

#### 2) Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The requirement "is construed liberally" and only requires the presence of one or more common questions that "are apt to drive resolution of the litigation." *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 119 (D. Ariz. 2022). Here, there are several common questions of fact and law that satisfy Rule 23(a)(2), such as whether

Defendant knew or should have known of the defect at issue in this case, and if so, when it discovered the defect; and whether the alleged defect would be material to a reasonable consumer.

### 3)  Typicality

Plaintiffs' claims must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Here, Plaintiffs and Class Members have all suffered the same injuries—they all received a product of lesser value than represented by Defendants. Nothing in the record suggests that the named Plaintiffs' claims and injuries are unique in a way that matters for purposes of the typicality requirement.

### 4)  Adequacy

Rule 23's adequacy requirement is satisfied where a representative party will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. Rule 23(a)(4). Courts in the Ninth Circuit consider two questions in evaluating this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  Plaintiffs' and Class

Counsel's interests are aligned and do not conflict with those of the Class Members. Smith Decl. at ¶ 24. Named Plaintiffs have been committed to their representation of the Classes through this litigation, communicating regularly with Class Counsel, providing information about their experiences, documents such as receipts and photographs, and providing their input regarding settlement. *Id.* Class Counsel, for their part, have vigorously prosecuted this action, and details about the work accomplished so far are detailed in the accompanying supporting declaration. Smith Decl. at ¶¶ 5-19, 21-25. Class Counsel have extensive experience in prosecuting class actions and have been approved as class counsel in multiple class actions in state and federal courts. *Id.* at ¶ 20, Exs. 2 and 3. Their experience and efforts ultimately resulted in an efficient and effective settlement that is fair, reasonable, and adequate. Smith Decl. at ¶ 25.

**B.     The Class Should Be Certified Under Rule 23(b)(3) for Settlement Purposes**

Rule 23(b)(3) is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Under the predominance prong of Rule 23(b)(3), "[w]hen common questions present a significant aspect of the case, and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Here, common questions predominate because all Class Members' claims arise under the same

or similar laws—California's UCL, CLRA, FAL, and the Song-Beverly Consumer

Warranty Act; New York's General Business Law § 349 and § 350; South Carolina's

Unfair Trade Practices Act; and the Magnuson-Moss Warranty Act. Because Plaintiffs'

claims are focused on the nature of Defendant's policies and procedures regarding how it

advertised and marketed its spa pumps, they are well-suited for class treatment.

Defendant's liability can be established largely, if not entirely, through class-wide

evidence.

Under the superiority prong of Rule 23(b)(3), the Court must determine whether a

class action is the most efficient and effective means of resolving the controversy.  *See*

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Here,

class treatment is superior given that consumers across the entire country were affected in

the same way by the same advertisements and given the judicial efficiency associated

with resolution of these claims in one district court.

## C.    The Proposed Notice and Notice Program Complies with Rule 23 and Due Process

Class notice must clearly and concisely describe the nature of the action and class

definition, inform class members that they may enter an appearance through an attorney

if the member so desires, detail the manner through which a class member may opt-out of

the settlement, state the binding effect of a class judgment on members.  *See* Fed. R. Civ.

P. 23(c)(2)(B).

The proposed notice program comports with Rule 23 and the requirements of due

process. This comprehensive plan for disseminating notice—including the direct notice

and supplemental forms of notice—is well-designed to reach the Class members and constitutes the best notice practicable under the circumstances.  *See* Smith Decl., Ex. 1 at §§ V and VIII.  Courts within the Ninth Circuit have approved analogous notice programs. *See*, *e.g.*, *AdTrader, Inc. v. Google LLC*, 2021 WL 2073816 (N.D. Cal. Mar. 23, 2021) (approving notice plan that included direct mailings, emails, and a case-specific website).

### D.    Class Counsel Should Be Appointed

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Courts consider the proposed class counsel's work in identifying or investigating potential claims, experience in handling class actions, knowledge of the applicable law, and resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).  Here, as explained above, Class Counsel have extensive experience prosecuting complex class action cases.  Smith Decl. at ¶ 20, Exs. 2 and 3.  Accordingly, the Court should appoint Smith Krivoshey, PC and Poulin | Willey | Anastopoulo, LLC as Class Counsel.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to (1) grant preliminary approval of the proposed Settlement Agreement, (2) conditionally certify a Settlement Class,  (3) appoint Plaintiffs' Counsel as counsel for the Class, (4) approve the Class Notice program and Claim Form; and (5) set dates for the Notice Date, Claim Deadline, Opt Out Date, Objection Deadline, and Final Fairness Hearing.

DATED: June 11, 2025

By: /s/    Joel D. Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (*pro hac vice*)
Aleksandr "Sasha" Litvinov (*pro hac vice*)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
E-Mail: joel@skclassactions.com
E-Mail: sasha@skclassactions.com
Phone: 617-377-7404

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (*pro hac vice*)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
E-Mail: yeremey@skclassactions.com
Phone: 415-839-7000

**POULIN | WILLEY
ANASTOPOULO, LLC**
Paul J. Doolittle, Esq. (*Pro Hac Vice
forthcoming*)
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email:paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

**FROST LLP**
Amy Wilkins Hoffman (AZ Bar No. 022762)
3200 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
E-Mail: amyh@frostllp.com
Phone: 480-466-7005

*Attorneys for Plaintiffs*