WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Franca Armstrong, et al.,

      Plaintiffs,

v.

Bestway (USA) Incorporated,

      Defendant.

No. CV-24-02812-PHX-SHD

**ORDER PRELIMINARILY APPROVING SETTLEMENT**

At issue is Plaintiffs Franca Armstrong, Mandy Islam, and Danielle Harper's ("Plaintiffs") unopposed Motion for Preliminary Approval of Class Action Settlement Agreement. (Doc. 35 ("Motion" or "Mot.".)  I held a hearing on the Motion on July 10, 2025, (Doc. 36), and after taking the matter under advisement, ordered the parties to provide supplemental briefing and supporting documentation regarding preliminary class certification, (Doc. 38).  Plaintiffs and Defendant Bestway (USA) Inc. ("Bestway") filed a Joint Supplemental Brief in support of the Motion and a declaration addressing my questions.  (Docs. 39, 41.)  Based on the contents of the Motion, Joint Supplemental Brief, and Declaration, as well as the information provided at the hearing, I will **grant** the Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In September 2024, Bestway, a manufacturer of spa pumps, together with the United States Consumer Product Safety Commission, announced a recall impacting over

860,000 pumps covering nine different models.[1]  (Doc. 29, First Amended Complaint ("FAC") at ¶ 2.)  The recall stemmed from fires involving allegedly defective spa pumps. (*Id.*)  Bestway's recall allowed consumers who still possessed a Bestway spa pump to either (a) receive a replacement spa pump, or (b) receive a credit or gift card valued at $100 or $189, depending on the model spa pump they purchased; consumers who no longer possessed a spa pump were left without any recourse against Bestway.  (FAC ¶¶ 5, 43.)

Plaintiff Harper filed a class action suit in the United States District Court for the Eastern District of Pennsylvania, while Plaintiffs Armstrong and Mandy filed similar claims in this matter.  (Mot. at 2.)  Counsel in both actions worked cooperatively and added Harper as a plaintiff in this action via the FAC, which asserts various common law and statutory causes of action.  (Mot. at 3; *see also* FAC at ¶¶ 58–192.)  Bestway answered and asserted various affirmative defenses.  (Doc. 30.)  Before filing the FAC and Answer, the parties reached a settlement in principle.  (Mot. at 2–3.)

Plaintiffs then filed the Motion, seeking certification of the class under Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement.  (*Id.* at 14–15.)  The parties describe the executed Class Action Settlement Agreement in detail and include it as an exhibit.  (*Id.* at 3–7; Doc. 35-2 ("Settlement" or "Settlement Agreement").)  Under the Settlement, Class Members who opted for a replacement spa pump under Bestway's recall automatically receive a one-year extension to Bestway's limited warranty, with an estimated value of $60.  (Mot. at 3–4.)  Class Members who received compensation through the recall or no longer have a spa pump are eligible to receive a $75 cash payment as long as they either participate in the recall or submit a valid proof of purchase with their claim form if they no longer possess a covered spa pump and did not previously participate in the recall.  (*Id.* at 4.)  The cash payments are capped at

---

[1]    The nine spa pump models at issue are the Bestway AirJet and HydroJet Spa Pump model numbers P05332, P05339, P05711, P05807, P07000, P07001, P05511, P07034, and P07572 (collectively, the "Class Product").  (Settlement at 4.)

$2,000,000; thus, if the total amount of valid claims for cash payments—plus $2,500 incentive fees paid to each of the named Plaintiffs—exceeds $2,000,000, the cash payments will be reduced pro rata. (*Id.* at 4–5.)

The Settlement also requires Bestway to pay all expenses associated with distributing and administering the benefits to Class Members, independent of the cap, as well as Class Counsel's attorneys' fees and costs, which are capped at $807,591. (*Id.* at 5.) If fees and costs are awarded in an amount below that cap, the difference between the amount awarded and the fees/costs cap will be distributed pro rata to each Class Member who submitted a claim for a cash payment. (*Id.* at 5–6.) Following execution of the Settlement, Plaintiffs moved for certification of the settlement class and preliminary approval of the Settlement.

## II.    LEGAL STANDARD

Procedurally, the class certification and settlement approval process moves forward in two steps. At the first step, the court preliminarily determines whether the proposed settlement class should be certified and whether the court "will likely be able to" approve the settlement proposal under the "fair, reasonable, and adequate" standard such that it can direct notice under Rule 23(e)(1) to all class members who would be bound by the settlement. *See* Fed. R. Civ. P. 23(e). At the second step, the court must evaluate whether to grant final approval. The Motion concerns only the first step.

### A.    Standard for Class Certification

Rule 23(a), Federal Rules of Civil Procedure, provides that a class action may proceed only if four prerequisites are met:

1. Numerosity: "the class is so numerous that joinder of all members is impracticable";

2. Commonality: "there are questions of law or fact common to the class";

3. Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

4. Adequacy of Representation: "the representative parties will fairly and

- 3 -

adequately protect the interests of the class."

*Doyle v. Pekin Ins. Co.*, 2025 WL 1192752, at *2 (D. Ariz. 2025) (quoting Fed. R. Civ. P. 23(a)).

Additionally, as pertinent to the Motion, Rule 23(b)(3) allows a court to certify a class action if it finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In conducting the requisite inquiry, courts consider several "pertinent" factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

The Supreme Court has explained that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Accordingly, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (citation omitted). The analysis a district court must engage in requires a "rigorous analysis" to ensure that the requirements of Rule 23(a) have been satisfied. *Id.* at 350–51.

**B.    Standard for Preliminary Approval of Class Settlement**

Furthermore, Rule 23 requires approval by the district court of any class action settlement. Fed R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or

a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). Approval requires the court to conduct a hearing and find that a settlement is "fair, reasonable, and adequate after considering" several factors. Fed. R. Civ. P. 23(e)(2) (setting forth factors). In the Ninth Circuit, district courts must balance eight factors when evaluating a proposed class settlement under Rule 23(e)(2):

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Some of these factors cannot be fully assessed until the final fairness hearing; therefore,

> [a]t the preliminary approval stage, courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval.

*Doyle*, 2025 WL 1192752, at *3 (citing *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009)); *see also Saliba v. KS Statebank Corp.*, 2021 WL 2105608, at *4 (D. Ariz. 2021) (preliminary approval is evaluated simply for "whether the Settlement is within the range of reasonableness").

Nonetheless, for settlements reached prior to formal class certification, the Ninth Circuit has recognized that "there is an even greater potential [than normal] for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval

as fair." *Id.* "The district court's approval order must show not only that it has explored the *Churchill* factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *Id.* at 947 (citation modified); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (concerns about the fairness of settlement agreements "warrant special attention when the record suggests that the settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement"). Ultimately, however, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citation omitted).

## III.    DISCUSSION

In the unopposed Motion, Plaintiffs ask that I (1) preliminarily certify a national class for settlement purposes (the "Settlement Class") and appoint Plaintiffs and their counsel as the Settlement Class's representatives and counsel; (2) preliminarily approve the proposed Settlement Agreement; and (3) approve the notice plan and forms of notice to the Settlement Class. (Mot. at 1–2.) I first address whether Plaintiffs have met their burden of establishing that the proposed Settlement Class meets the requirements of Rule 23(a) and (b)(3). I then examine whether the Settlement is fair, reasonable and adequate under Rule 23(e) and the pertinent *Churchill* factors. Finally, because I will preliminarily approve the Settlement, I address whether the parties' proposed notice plan is adequate.

### A.    Preliminary Certification of the Settlement Class

The parties agree to the following definition of the Settlement Class: All people who purchased Class Product from May 2021 through May 2024 (the "Class Period"). (Mot. at 3.) For the reasons set forth below, the parties have established that the Settlement Class meets the requirements of Rule 23(a) and (b)(3).

### 1.    Rule 23(a)(1)—Numerosity

To satisfy Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it."

*In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589–90 (N.D. Cal. 2015). The term "impracticable" has been construed to mean that joining all claimants would be difficult and inconvenient. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Although there is no set numerical threshold, courts presume that joining more than 40 claimants would be impractical. *See, e.g.*, *id.; Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

Here, the proposed Settlement Class is comprised of approximately 860,000 consumers. (Mot. at 12.) Accordingly, Rule 23(a)(1) is readily satisfied.

### 2.    Rule 23(a)(2)—Commonality

Rule 23(a)(2) specifies that a class action present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). There must be a minimum of one common question of law or fact shared by the class to satisfy this provision. *See, e.g.*, *Wal-Mart*, 564 U.S. at 359 ("[F]or purposes of Rule 23(a)(2), even a single common question will do." (cleaned up)). Accordingly, Rule 23(a)(2) presents a "'relatively light burden' that 'does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues.'" *Esparza v. SmartPay Leasing, Inc.*, 2019 WL 2372447, at *2 (N.D. Cal. 2019) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Plaintiffs have demonstrated the existence of questions of law and fact that are common to the proposed Settlement Class, such as whether Bestway knew or should have known of the defect in the Class Product, whether the defect would be material to a reasonable consumer, whether Bestway failed to disclose the defect from potential customers, and whether Bestway violated the consumer protection laws at issue. (FAC ¶ 50; *see also* Mot. at 11–12.)

### 3.    Rule 23(a)(3)—Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The inquiry focuses on "whether other members have the same or similar injury as [the class representatives], whether the action is based on conduct which is not unique to the [representatives], and whether other class members have been injured by the same conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quotation marks omitted); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The representatives' claims "need not be substantially identical" to other class members' claims to satisfy the typicality requirement. *Parsons*, 754 F.3d at 685 (citation omitted). Thus, if the representatives' and other class members' claims arise from a similar course of conduct and share the same legal theory, certain factual differences or differing damages may not necessarily preclude typicality. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116–18 (9th Cir. 2017) (holding that "typicality is not defeated" when a representative plaintiff's "precise injuries are [not] identical" to the class and her "damages differ[ed] from the damages of some class members").

Plaintiffs' claims and the class members' claims are nearly identical. They all arise from similar defects in the Class Product that negatively impacted the value of the goods purchased and involve a similar alleged course of conduct by Bestway. (*See generally,* FAC.) Moreover, although Plaintiffs purchased only one of the nine models of spa pumps that comprise the Class Product, this does not negate typicality given that the claims need not be substantially identical. *See Parsons*, 754 F.3d at 685. Accordingly, the typicality requirement is satisfied here.

### 4.    Rule 23(a)(4)—Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The inquiry under this provision "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As the Supreme Court has explained, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex.*

*Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). Courts in the Ninth Circuit ask the following questions when determining whether class representatives adequately represent the class: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). "The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)." *Whitehead v. Amica Mut. Ins. Co.*, 2025 WL 870990, at *8 (D. Ariz. 2025) (finding no conflict of interest "especially in light of the commonality and typicality requirements being met") (citation modified).

At the July 10, 2025 hearing, Plaintiffs addressed questions about whether their purchase of only one of the nine models at issue rendered them inadequate representatives, or created a conflict between them and class members who had purchased other models. Following the hearing, the parties supplemented the Motion with additional briefing pertinent to this issue. (Docs. 39, 40.) Plaintiffs have established that they do not have any conflict with the other members of the proposed Settlement Class and are adequate representatives. That Plaintiffs only purchased one of the nine spa pump models at issue is of minimal importance in this case given their model was the most commonly purchased model—comprising a significant majority of the approximately 860,000 spa pumps sold, (Doc. 41 at ¶ 4)—and the defect was the same across models. *See Lessin v. Ford Motor Co.*, 756 F. Supp. 3d 885, 933–34 (S.D. Cal. 2024) (finding alignment between class representatives and other members, even though they only owned two of the four product models at issue, given that the defect was the same and they suffered similar injury).

Furthermore, Plaintiffs have demonstrated that the variance in price of the different spa pumps, and the different compensation offered for different models during the recall, does not create a conflict. First, the difference in price and compensation was

- 9 -

not so large as to raise concerns that Plaintiffs might have a conflict. (Doc. 41 at ¶¶ 2–3.) Second, as Plaintiffs note, because class members were already able to obtain differentiated compensation by participating in the recall, there is less of a concern with treating all class members similarly for purposes of compensation under the Settlement. (Doc. 39 at 4–5.) And third, Plaintiffs represent all members of the putative class with respect to participation in the recall, because one availed herself of the replacement option, and the other two did not participate in the recall. (Doc. 39 at 2.)

Likewise, Plaintiffs have demonstrated that their counsel has and will vigorously pursue the interests of the Settlement Class. "Although there are no fixed standards by which vigor can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (cleaned up), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. Here, Plaintiffs have provided information about counsel's experience in similar class actions, as well as their efforts in prosecuting this action, including obtaining a favorable settlement in light of litigation risks. (Mot. at 13–14 (citing Doc. 35-1 at ¶¶ 5–25).) Accordingly, Plaintiffs have established adequacy.

### 5.    Rule 23(b)(3)

Plaintiffs seek class certification pursuant to Rule 23(b)(3), (Mot. at 14–15), which provides for class treatment when (a) questions of law or fact common to class members predominate over questions affecting individual members, and (b) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

#### a.    Predominance

Although the predominance requirement is similar to Rule 23(a)(2)'s commonality requirement, it is "even more demanding." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The predominance inquiry "focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quotation marks omitted).  Thus, "courts have a duty to take a close look at whether common questions predominate over individual ones to ensure that individual questions do not overwhelm questions common to the class." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 927 (9th Cir. 2019) (quotation marks omitted). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation marks omitted).

Here, Plaintiffs have demonstrated that the common issues predominate over the individual issues.  The class members' claims arise under the same or similar consumer protection laws.  (Mot. at 14–15 (citing state and federal laws supporting their claims).) Moreover, the claims all relate to Bestway's conduct in marketing its spa pumps, involve the same defect across all models, and would rely on much of the same evidence.  (*Id.*) And although the different class members might theoretically have suffered different damages depending on which model spa pump they purchased or whether they participated in Bestway's recall, this "does not defeat finding predominance." *Just Film*, 847 F.3d at 1121.  Put another way, there is minimal likelihood that the class members have strong interests in individually controlling the prosecution of separate actions, and it is unlikely that managing the class action would be difficult.  *See* Fed. R. Civ. P. 23(b)(3)(A), (D).

b.    Superiority

"Where classwide litigation of common issues will reduce litigation costs and

promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, a class action will undoubtedly promote efficiency. Because each class member's claims involve substantially similar issues, filing tens or hundreds of thousands of individual cases would increase litigation costs and waste both the parties' and courts' time and resources. Additionally, although damages would theoretically vary among the class members, the vast majority of their claims would be too small to make individual litigation possible. *See McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 254 (D. Ariz 2022) ("[B]ecause the recoveries of each individual class member will be relatively small, a class action is superior to other methods of adjudication."). Additionally, it appears that the only litigation to date concerning Bestway's spa pump recall has been asserted by Plaintiffs, (*see* Mot. at 3), suggesting that this class action is a superior method for resolving the class members' claims in this forum. *See* Fed. R. Civ. P. 23(b)(3)(B), (C). Thus, the superiority requirement is met.

Because Plaintiffs' proposed Settlement Class meets the requirements of Rules 23(a) and (b), the class will be certified for settlement purposes.

### B.     Preliminary Approval of the Settlement

Based on the Motion, including the Settlement attached to it, the parties' Joint Supplemental Brief supporting the Motion (Doc. 39), and the Declaration of Pat Fumagalli, (Doc. 41 (sealed)), the Settlement will be preliminarily approved because I find that I will likely be able to approve it under Rule 23(e)(2)'s "fair, reasonable and adequate" standard after considering the four factors described in *Horton*. 266 F.R.D. at 363.

#### 1.     Non-Collusive Settlement Negotiations

The means and negotiations by which the parties settled the action must be evaluated under the first factor. *Id.* at 363. Courts bear the obligation to evaluate the scope and effectiveness of the investigation plaintiffs conducted prior to reaching an agreement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see*

*also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007) ("Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement."); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) ("Where . . . parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." (quotation marks omitted)).

In this case, the Settlement bears no indicia of collusion. It was negotiated with the benefit of the services of a mediator who presided over three separate mediations, (*see* Mot. at 8–9 (citing Doc. 35-1 at ¶¶ 8–10, 21–25)), suggesting that the Settlement was the result of an adversarial, arms' length, bargaining process, *see In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) ("There appears to be no better evidence of a truly adversarial bargaining process than the presence of a neutral third party mediator." (citation modified)). And in advance of the mediations, the parties engaged in some informal discovery through which Bestway produced data concerning, among other things, sales of the Class Product and putative class members' participation in the recall, which was sufficient for the parties to assess their claims and defenses. (Doc. 35-1 at ¶ 8.)

Given the lack of any evidence suggesting that the Settlement was negotiated collusively or in haste, I am preliminarily satisfied that it was the product of informed, arms' length negotiations. *See Hanlon*, 150 F.3d at 1027 (affirming settlement approval when there was "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"). Nonetheless, at the fairness hearing the parties must be prepared to present evidence regarding the adequacy of the negotiation process.

### 2.    No Obvious Deficiency

For purposes of determining whether there is an obvious deficiency, the Ninth Circuit has identified three particular warning signs "that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations": (1) "When counsel receive a disproportionate distribution of the settlement," (2) "clear sailing" provisions requiring payment of attorneys' fees separate from class compensation and where a defendant promises not to challenge agreed-upon fees, and (3) reverter provisions that result in unawarded fees reverting to defendants rather than to the class. *In re Bluetooth*, 654 F.3d at 947; *Briseño v. Henderson*, 998 F.3d 1014, 1026–27 (9th Cir. 2021) (identifying "red flag" of a clear sailing arrangement where the defendant "agreed not to challenge the agreed-upon fees for class counsel," which "signal[ed] the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members").

Here, none of these deficiencies identified in *In re Bluetooh* exists—there is no clear sailing provision, no reverter of unawarded fees to Bestway, and no disproportionate payment of the settlement amount to counsel. Indeed, the Settlement provides that "[s]hould the Court order an award of attorneys' fees, costs, and expenses in a total amount less than [the amount sought by counsel of] $807,591.00, the difference between the amount awarded to Class Counsel and $807,591.00 shall be distributed pro rata to each Class Member who has submitted a valid claim for a cash payment." (Settlement at 17–18.)  Moreover, it appears that the majority of the benefits of the Settlement will accrue to the class members rather than counsel, given that the settlement fund for cash payments is capped at $2,000,000 (plus amounts not awarded to counsel below the fee cap) and class members may be entitled to an extended warranty with additional value. (Settlement at 12–14.)

### 3.    No Preferential Treatment

District courts must be "particularly vigilant" for signs that counsel has allowed the "pursuit of their own self-interests and that of certain class members to infect the

negotiations." *In re Bluetooth.*, 654 F.3d at 947. Accordingly, preliminary approval of a class settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Class representatives are, however, "eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). These payments "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). These payments, however, must be evaluated individually to avoid "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion," and this evaluation entails balancing "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton*, 327 F.3d at 975, 977.

Here, the Settlement calls for a minimal incentive fee of $2,500 for each of the three Plaintiffs. (Settlement at 17.) This amount would be less than a tenth of a percent of the estimated value of the Settlement, which is reasonable and raises no concerns of collusion. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (approving $45,000 in incentives awards, which made up "a mere .17% of the total settlement fund of $27,250,000").

Moreover, the parties have, at this preliminary stage, satisfied my concerns about the Settlement giving preferential treatment to some members of the class over others. As noted above, although the Settlement awards the same relief to all class member regardless which spa pump model they purchased—which differ in cost—the parties have sufficiently explained that the recall benefits sufficiently distinguish between models. (Doc. 39 at 4–5, 6.) While the parties should be prepared to argue and, potentially, prepare further evidence on this subject at the fairness hearing, I preliminarily find that

the Settlement does not improperly benefit Plaintiffs or segments of the class.

### 4. **Within Range of Possible Approval**

Finally, courts focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer" when evaluating whether a settlement falls "within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1080. The Motion asserts that the value of the Settlement exceeds "$10 million dollars" based on the cash fund of $2,000,000 for class members who do not want a replacement spa pump, and an $8,000,000 estimated value of the extended warranty for those who select a replacement. (Mot. at 1, 11.) At the July 10, 2025 hearing, Plaintiffs' counsel indicated that maximum damages in cases like this one, which are in the form of "price premium damages," are approximately 10 to 20 percent, but did not provide an actual estimated dollar value of the Settlement Class's claim. Counsel further explained that obtaining such a best case result would require more than five years of litigation and, of course, the outcome would be uncertain.

At this stage, I preliminarily find that the value of the Settlement is within the range of possible approval. The parties, however, should be prepared to present more concrete evidence of the maximum value of the Settlement Class's claims at the fairness hearing to allow for a more complete understanding of the adequacy of the Settlement's value. *See, e.g.*, *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 124–25 (D. Ariz. 2022) (explaining that courts need more than "vague and conclusory statements" about numerical evidence to determine whether a proposed settlement's value is adequate).

In sum, I will preliminarily approve the proposed Settlement because it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Horton*, 266 F.R.D. at 363 (quotation marks omitted).

### C.    Proposed Class Notice and Notice Program

The parties have proposed a form of class notice, as well as a program for giving that notice, to the members of the Settlement Class.  Rule 23(c)(2)(B) sets forth the requirements for notice to a class certified under Rule 23(b)(3):

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort . . . . The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  In addition to outlining the contents of the notice, Rule 23 requires that the notice be provided via "United States mail, electronic means, or other appropriate means."  *Id.*  Additionally, the Supreme Court has explained that due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

In this case, the Settlement includes proposed class notice forms ("Notice Forms"), (*see* Settlement, Exhibits D (Long Form Notice), E (Summary Notice)), and a proposed notice plan ("Notice Plan"), (*id.* at 14–17).  Both Notice Forms are in an easy-

to-understand question-and-answer format and satisfy the requirements of Rule 23(c)(2)(B). The Notice Plan requires direct notice by email and United States mail and email to all members of the Settlement Class whose email or home addresses are available, an online advertising notice program designed to ensure that at least 80 percent of the class receive action notice, and a reminder summary notice via email 60 days after the date of the initial notice for all members of the class who have not yet submitted a claim, objection, or opt-out notice. (Settlement at 14–15). Accordingly, the Notice Plan also complies with Rule 23(c)(2)(B). *See, e.g.*, *Dale v. Travelers Property Casualty Ins. Co.*, 2024 WL 4503808, at \*10 (D. Ariz. 2024) (finding notice was appropriate where it was served "by United States Mail," and was "in the form of easily understandable questions and answers" and "direc[ed] Class Members to contact Class Counsel . . . for more detailed information"). Furthermore, both the form of notice and the Notice Plan comport with due process because they are reasonably calculated to apprise class members of the pendency of this lawsuit and afford them the opportunity to object. *See Mullane*, 339 U.S. at 314. Thus, the proposed Notice Forms and Notice Plan will be approved.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** granting Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement (Doc. 35).

**IT IS FURTHER ORDERED** as follows:

1.    Defined Terms. This Order incorporates by reference the definitions in the Settlement Agreement, and all terms used in this Order shall have the same meanings as set forth in the Settlement Agreement.

2.    Class Definition. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I preliminarily certify, solely for purposes of effectuating the Settlement, the following Settlement Class: all people who purchased a Class Product during the Class Period. Excluded from the Class are: (a) Defendant and its employees, principals, officers,

directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Actions have been or are assigned and any members of their immediate families; and (c) all persons who have filed a timely Request for Exclusion from the Class.

3.    Class Representatives.    I preliminarily appoint Danielle Harper, Franca Armstrong, and Mandy Islam as Settlement Class Representatives.

4.    Class Counsel.  I preliminarily appoint Poulin Willey Anastopoulo, LLC, Hoffman Legal, LLC, and Smith Krivoshey, PC as Class Counsel for the Settlement Class.

5.    Preliminary Class Certification of Settlement Purposes Only.  I preliminarily find, solely for purposes of the Settlement, that the Rule 23 criteria for certification of the Settlement Class exist.

6.    Form of Class Notice. I approve the form and content of the proposed Long Form Notice and Summary Notice (Exhibits D and E to the Settlement Agreement) and Claim Form (Exhibit C to the Settlement Agreement). I authorize the Parties to make non-material modifications to the Settlement Class Notice and Claim Form prior to mailing if they jointly agree that any such changes are appropriate.

7.    Notice.  No later than the date specified in Paragraph 20 below, the Settlement Administrator shall provide notice to the Class pursuant to the terms of the Settlement Agreement. The Parties shall coordinate with the Settlement Administrator to provide notice to the Class pursuant to the terms set forth therein.

8.    Administration. I appoint Simpluris, Inc. as the Settlement Claim Administrator ("Settlement Administrator"). The Settlement Administrator is directed to perform all settlement administration duties set forth in, and pursuant to the terms and time periods of, the Settlement Agreement, including mailing of the CAFA Notice; implementing and maintaining the Settlement website; disseminating the Class Notice to the Settlement Class; the processing, review and determination of timely submitted and proper Claims Forms under the Settlement; and the submission of any declarations and other materials to counsel and the court; as well as any other duties required under the Settlement

Agreement.

9.      Exclusion from the Class. Any Class Member who wishes to be excluded from the Class must send to the Settlement Administrator by U.S. Mail a personally signed letter, including their (a) full name, (b) current address, (c) a clear statement communicating that they elect to be excluded from the Class and do not wish to be a Class Member, (d) their signature, and (e) the case name and case number of the Action. A Class Member can exclude only himself or herself from the Class, and shall not be allowed to request that another individual or group be excluded.  "Mass" or "class" opt-outs are not permitted. Any such Request for Exclusion must be postmarked and sent to the Settlement Administrator no later than the date specified in Paragraph 20 below (the "Opt-Out Deadline"). The Settlement Administrator shall forward copies of any written requests for exclusion to Plaintiffs' Counsel and Defense Counsel.

10.      Binding Impact.  If the proposed Settlement is finally approved, any potential Class Member who has not submitted a timely written Request for Exclusion on or before the Opt-Out Deadline shall be bound by all terms of the Settlement Agreement and the Final Order and Final Judgment, regardless of whether they have requested exclusion from the Settlement, even if the potential Class Member previously initiated or subsequently initiates any litigation against any or all of the Released Parties relating to Released Claims.  All persons or entities who properly exclude themselves from the Class shall not be Class Members and shall relinquish their rights or benefits under the Settlement Agreement, should it be approved, and may not file an objection to the Settlement or be entitled to any settlement benefits.

11.      Objections: Any Class Member who has not filed a timely written Request for Exclusion may object to the fairness, adequacy, or reasonableness of the Settlement Agreement or the Settlement, or to the requested award of attorneys' fees and expenses, or Plaintiffs' service awards.

12.      Copy of Objection: Any Class Member who objects to the fairness, reasonableness, and/or adequacy of the Settlement must, in addition to filing the written

- 20 -

objection no later than the Objection Deadline set forth in Paragraph 20 below, provide a copy of the written objection by U.S. mail or e-mail to the Settlement Administrator.  The Settlement Administrator shall forward copies of any objections to Plaintiffs' Counsel and Defense Counsel.

13.    <u>Objection Contents</u>: Any objecting Class Member must include in the objection:

    a.  the objector's full name, address, and telephone number;

    b.  a statement, sworn to under penalty of perjury, attesting to the fact that (i) the objector purchased one or more of the Class Products during the Class Period, (ii) describing the model Class Product (*i.e.*, AirJet or HydroJet Spa Pump) and model number, and (iii) the date and location of purchase and provide proof of purchase of the Class Product;

    c.  proof of purchase of a Class Product, such as through a photograph of the Class Product or, if you no longer have the Class Product, a receipt or email confirmation of the purchase;

    d.  a written statement of all grounds for the objection accompanied by any legal support for such objection;

    e.  copies of any papers, briefs, or other documents upon which the objection is based and are pertinent to the objection;

    f.  the name, address and telephone number of any counsel representing said objector; and

    g.  a list of all other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five (5) years, including the full case name, the jurisdiction in which it was filed and the docket number. If the Class Member or his, her, their or its counsel has not objected to any other class action settlement in the United States in the previous five (5) years, the class member shall affirmatively so state in the objection.

14.    <u>Appearance</u>.  Any objecting Class Member may appear, in person or by counsel, at

the Final Fairness Hearing to explain why the proposed Settlement should not be approved as fair, reasonable, and adequate, or to object to any motion for Class Counsel Fees and Expenses or Class representative service award.  To appear, the objecting Class Member must file with the Clerk of the Court a Notice of Intention to Appear at the Final Fairness Hearing.  The Notice of Intention to Appear must include copies of any papers, exhibits or other evidence and the identity of witnesses that the objecting Class Member (or the objecting Class Member's counsel) intends to present at the Final Fairness Hearing.  Any Class Member who does not provide a Notice of Intention to Appear in accordance with the deadline and other requirements set forth in Order shall be deemed to have waived any right to appear, in person or by counsel, at the Final Fairness Hearing.

15.     Waiver.  Any Settlement Class Member who has not properly filed a timely objection in accordance with the deadline and requirements set forth in this Order and the Class Notice shall be deemed to have waived any objections to the Settlement and any adjudication or review of the Settlement Agreement by appeal or otherwise.

16.     Preliminary Injunction.  All Class Members and/or their representatives who do not timely and properly exclude themselves from the Class are barred and enjoined from directly, indirectly, derivatively, in a representative capacity, or in any other capacity filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing any action in any forum (state or federal) as individuals, class members, putative class members, or otherwise against the Released Parties (as defined in the Settlement Agreement) in any court or tribunal asserting any of the Released Claims (as defined in the Settlement Agreement), and/or from receiving any benefits from any lawsuit, administrative or regulatory proceeding, or order in any jurisdiction, arising out of, based on, or relating to the Released Claims.  In addition, all such persons are hereby barred and enjoined from filing, commencing, or prosecuting a lawsuit against Defendant (or against any of its related parties, parents, subsidiaries, or affiliates) as a class action, a separate class, or group for purposes of pursuing a putative class action (including by seeking to amend a pending complaint to include class allegations or by

seeking class certification in a pending action in any jurisdiction) on behalf of Class Members who do not timely exclude themselves from the Class, arising out of, based on, or relating to the Released Claims.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, I find that issuance of this preliminary injunction is necessary and appropriate in aid of my continuing jurisdiction and authority over the Actions.

17.    <u>Termination of Settlement</u>.  In the event I do not grant final approval to the Settlement, or for any reason the parties fail to obtain a Final Order and Final Judgment as contemplated in the Settlement Agreement, or the Settlement Agreement is terminated pursuant to its terms for any reason, then the following shall apply:

      a.  All orders and findings entered in connection with the Settlement Agreement shall become null and void and have no force and effect whatsoever;

      b.  The conditional certification of the Class pursuant to this Order shall be vacated automatically, and the Actions shall proceed as though the Class had never been certified pursuant to the Settlement Agreement and such findings had never been made;

      c.  Nothing in this Order or pertaining to the Settlement Agreement, including any of the documents or statements generated or received pursuant to the claims administration process, shall be used as evidence in any further proceedings in this case, including, but not limited to, motions or proceedings seeking treatment of the Actions as class actions;

      d.  Nothing in this Order or pertaining to the Settlement Agreement is, or may be construed as, a presumption, concession, or admission by or against Defendant that the Actions meet the requisites for certification as a class action under federal law; and

      e.  All of my prior Orders having nothing whatsoever to do with the Settlement shall, subject to this Order, remain in full force and effect.

18.    <u>Alteration of Exhibits</u>. Plaintiffs' Counsel and Defense Counsel are hereby authorized to use all reasonable procedures to further the administration of the

Settlement that are not materially inconsistent with this Order or the Agreement, including making, without further approval, minor changes to the form or content of the Long Form Notice, Summary Notice, Claim Form, and other exhibits that they jointly agree are reasonable or necessary.

19.    Retaining Jurisdiction. I shall maintain continuing jurisdiction over these settlement proceedings to ensure the effectuation thereof for the benefit of the Class, and for any other necessary purpose.

20.    Settlement Deadlines.  Based on the foregoing, I am setting the schedule below for the Final Fairness Hearing and the actions which must precede it.  If any deadline set forth in this Order falls on a weekend or federal holiday, then such deadline shall extend to the next business day.  These deadlines may be extended by court order, for good cause shown, without further notice to the Class.  Settlement Class Members must check the Settlement website regularly for updates and further details regarding this Settlement:

| Event | Deadline Pursuant to Settlement Agreement | Date Ordered by Court |
|---|---|---|
| Notice shall be provided in accordance with the Notice Plan and this Order | 45 days after Preliminary Approval Granted | May 18, 2026 |
| Class Counsels' application for Attorneys' Fees and Expenses and service awards for Plaintiffs-Settlement Class Representatives and | 45 days after Notice Date | July 2, 2026 |
| Reminder Notice shall be provided in accordance with the Notice Plan in this Order | 60 days after Notice Date | July 17, 2026 |
| Objections to the Settlement, Class Counsels' Fee and Expense Application, and/or the request for service awards ("Objection Deadline") | 90 days after Notice Date | August 17, 2026 |
| Requests for Exclusion from the Settlement ("Opt-Out | 90 days after Notice Date | August 17, 2026 |

| Date") | | |
|---|---|---|
| Deadline for Class Members to submit Claim Forms ("Claims Deadline") | 90 days after Notice Date | August 17, 2026 |
| Plaintiffs' Motion for Final Approval of the Settlement and response to any objections | 28 days before Final Fairness Hearing | August 21, 2026 |
| Deadline to submit notices of appearance at the Final Fairness Hearing | 28 days before Final Fairness Hearing | August 21, 2026 |
| Deadline for Claims Administrator to submit declaration (1) stating the number of claims, requests for exclusion, and objections to date, and (2) attesting that Notice was disseminated in a manner consistent with the Settlement Agreement or otherwise required by court order. | 10 days before Final Fairness Hearing | September 9, 2026 |
| Final Fairness Hearing will be held at Courtroom 502, 401 W. Washington St., Suite 130, SPC 1 Phoenix, AZ 85003-2118, or by video conference as determined by court order. | 120 days after Notice Date, or as soon thereafter as may be heard by the court | Date: Friday, September 18, 2026<br><br>Time: 9:00 a.m. |

Dated this 1st day of April, 2026.

_____
Honorable Sharad H. Desai
United States District Judge